NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PETER VARGAS,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-2289

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-5091, Chief Judge Margaret C. Bartley.

---

Decided: January 6, 2021

---

PETER VARGAS, San Antonio, TX, pro se.

KYLE SHANE BECKRICH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM; CHRISTINA LYNN GREGG, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before O'MALLEY, TARANTO, and STOLL, *Circuit Judges*.

PER CURIAM.

Peter Vargas, a veteran, filed a motion with a regional office of the Department of Veterans Affairs (VA) seeking to set aside, based on clear and unmistakable error, certain earlier adverse VA decisions on his claims for disability benefits relating to lower-back problems and asthma. The regional office and then the Board of Veterans' Appeals found no clear and unmistakable error calling for revision of the VA decisions, and the United States Court of Appeals for Veterans Claims (Veterans Court) affirmed. *Vargas v. Wilkie*, No. 19-5091, 2020 WL 2754902 (Vet. App. May 28, 2020). Mr. Vargas appeals. Because we lack jurisdiction to decide the issues that Mr. Vargas raises, we must dismiss his appeal.

I

Peter Vargas served in the United States Air Force from August 1971 to October 1983. Almost immediately after leaving the service, he filed a claim for disability benefits relating to several conditions, including lower-back pain and asthma, and the relevant VA regional office, in November 1983, awarded benefits based on a finding of service-connected asthma and lumbar spine spondylosis (an arthritic condition of the lumbar spine), assigning a 10% rating effective October 25, 1983. Mr. Vargas filed several claims following the November 1983 decision, arguing in part for a higher rating for his lumbar spine spondylosis disability, which was worsening over time, and he obtained a rating of 20% effective November 1, 1988, and of 40% effective March 6, 1990. Mr. Vargas also obtained higher ratings for his asthma-based disability, ultimately receiving a rating of 30% effective June 13, 2005.

On September 24, 2010, Mr. Vargas submitted, as relevant here, a claim for benefits for bilateral lower-extremity sciatica, which he alleged was secondary to his previously recognized lower-back disabilities, as well as claims for a higher rating for his asthma-based disability. On June 22, 2011, the regional office issued a rating decision that assigned Mr. Vargas a 10% rating, effective the date of his September 24, 2010 claim, for a disability based on "intervertebral disc syndrome with degenerative arthritis changes" involving neurological abnormalities of his lower-right extremity and that continued his rating of 30% for his asthma-based disability. S.A. 17. The regional office denied Mr. Vargas's claim for sciatica of the lower-left extremity.

On May 3, 2013, Mr. Vargas submitted to VA an allegation of clear and unmistakable error (CUE) as a basis for revising the regional office's June 2011 evaluation of a number of his disability claims, and the Veterans Court construed the filing as also alleging CUE in the November 1983 decision. On June 5, 2014, the regional office rejected Mr. Vargas's arguments, continuing the ratings previously assigned.

On June 30, 2014, Mr. Vargas filed a Notice of Disagreement with the regional office regarding his CUE claims for spondylosis and "secondary neurological abnormalities" related to that condition, as well as his asthma claims. The regional office issued a statement of the case on January 22, 2016, again rejecting Mr. Vargas's arguments. Mr. Vargas then appealed the regional office's CUE decisions to the Board on February 8, 2016. S.A. 3.

On June 26, 2019, the Board entered its final determination as to what it determined to be five distinct challenges that Mr. Vargas raised. S.A. 14. First, the Board concluded that the June 2011 decision did not contain CUE in denying Mr. Vargas's claim for a higher rating regarding his lower-back disabilities. S.A. 14. The Board explained

that "there is no indication that [Mr. Vargas] sought an increased rating for the back disability" in his September 24, 2010 filing, even if the sciatica could be deemed "secondary to his service-connected back disability." S.A. 18. The Board also noted that Mr. Vargas "failed to cite any specific error" in his claim of CUE, characterizing his claim as "broad-brush allegations" that did not adequately identify the specific nature of the alleged error and rejected Mr. Vargas's argument for a higher rating. S.A. 19. The Board explained that Diagnostic Code 5239, which provided the basis for the asserted higher rating, required evidence of "unfavorable ankylosis," a condition in which the spine is fixed in flexion or extension that produces one or more associated complications, such as restricted breathing, diaphragmatic respiration, or neurologic symptoms due to nerve-root stretching. 38 C.F.R. § 4.71a, Note (5). That evidence, the Board found, was not part of the record at the time of the June 2011 rating decision. S.A. 19.

Second, the Board rejected Mr. Vargas's argument that the June 2011 rating decision contained CUE insofar as it failed to apply separate ratings for the neurological abnormalities, such as sciatica, in his lower extremities that Mr. Vargas claimed were associated with his lower-back disabilities. S.A. 20–21. For this issue, as for the CUE allegation regarding a higher rating for his lower-back disabilities, the Board explained that Mr. Vargas's "broad-brush allegations cannot serve as a basis for CUE." S.A. 20.

Third, the Board rejected Mr. Vargas's argument that the June 2011 rating decision's effective date should have been earlier than September 24, 2011—the date he filed the claim—because Mr. Vargas "provide[d] no indication as to why an earlier effective date is warranted." S.A. 21.

Fourth, the Board rejected Mr. Vargas's argument that he was entitled to an effective date before October 25, 1983, for his asthma, explaining that the presently granted

effective date was the earliest possible effective date because that was the date that he ended his military service. S.A. 22.

Fifth, the Board rejected Mr. Vargas's argument that the November 1983 and June 2011 rating decisions should have assigned a 100% rating for his asthma. The Board noted that "the lay and medical evidence of record at the time of [both rating decisions] makes no mention" of Mr. Vargas's medications, which he argued supported a higher rating under Diagnostic Code 6602 (as it existed respectively in November 1983 and June 2011). S.A. 24. In addition, the Board explained that despite Mr. Vargas's argument, VA's failure to obtain a medical opinion related to the condition "cannot constitute CUE" for breaching the duty to assist. S.A. 25 (citing *Cook v. Principi*, 318 F.3d 1334, 1345–47 (Fed. Cir. 2002)).

Mr. Vargas appealed the Board's decision, which the Veterans Court affirmed. The Veterans Court first addressed the claims related to the lumbar spine disability and associated neurological abnormalities. Regarding Mr. Vargas's claims for his lumbar spine disability, the Veterans Court ruled that the regional office correctly determined that Mr. Vargas "did not express an intent to seek a higher evaluation for spondylosis" in his September [24,] 2010 claim. S.A. 6. Similarly, the Veterans Court found no error in the Board's determination that the June 2011 decision contained "no indication of unfavorable ankylosis." S.A. 6. And the court found that Mr. Vargas failed to show "how the [regional office] erred in its June 2011 decision to award a 10% evaluation for right lower extremity radiculopathy with an effective date of September 24, 2010, or to deny service connection for left lower extremity radiculopathy." S.A. 7.

The Veterans Court then addressed the claims of CUE regarding Mr. Vargas's asthma disability. The Veterans Court reiterated that Mr. Vargas received "the earliest

possible effective date for that disability." S.A. 9. Similarly, the court affirmed the Board's determination that Mr. Vargas "fail[ed] to show how the [regional office's] assignment of a 10% evaluation in November 1983" or "an evaluation in excess of 30% in June 2011 constituted CUE," considering "contemporaneous medical records" supported those determinations. S.A. 11. Therefore, the Veterans Court affirmed the Board's determination. S.A. 12.

The Veterans Court's decision became final on August 10, 2020. Mr. Vargas timely appealed.

## II

Our jurisdiction in cases from the Veterans Court is limited. *Wanless v. Shinseki*, 618 F.3d 1333, 1336 (Fed. Cir. 2010). In a case like this, not involving a constitutional issue, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). This court does, however, have jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions." *Id.* § 7292(d)(1). "Although the veterans benefits adjudication system is nonadversarial and paternalistic, . . . the ultimate burden of showing jurisdiction rests with the veteran." *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001).

The majority of Mr. Vargas's arguments focus on the merits of his claims and ask that we reverse the Veterans Court's affirmance of the Board's decisions. But Mr. Vargas has not identified a legal error in the Veterans Court's decision. His arguments ask that we re-weigh the facts of his claims to decide if the Veterans Court failed to correctly evaluate the Board's CUE rulings or that we question the Veterans Court's record-specific interpretations of sometimes-opaque filings to determine what specific contentions were presented to, and ruled on by, the regional office at various times. *See Lang v. Wilkie*, 971 F.3d 1348, 1352 (Fed. Cir. 2020) ("[E]ach allegation of CUE must be made,

with specificity, to the Board for the Veterans Court to exercise jurisdiction over it."). These challenges are either to factual determinations or to applications of legal standards to specific facts, but such challenges are outside our jurisdiction.

For example, Mr. Vargas appears to argue that the Board did not properly consider "VA X-ray reports [that] noted secondary moderate rhinorrehea, moderate pharyngitis, enlarged tonsils," and other symptoms. Vargas Inf. Opening Br. at 4; *see also id.* at 6 (same). This contention focuses on fact findings and applications of law to fact at the Board level, not on legal interpretations at the Veterans Court level. Similarly, Mr. Vargas appears to argue that the regional office misapplied the presumption of soundness, Vargas Inf. Opening Br. at 5, an argument that focuses on VA and not the Veterans Court, and that also amounts to a challenge to an "application of the law to facts" that is beyond our jurisdiction. *Cook v. Principi*, 353 F.3d 937, 937 (Fed. Cir. 2003) ("Although Mr. Cook presents his argument as a legal premise couched in terms of statutory interpretation, the review Mr. Cook requests ultimately reduces to an application of the law to facts."); *see also Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007) ("Our jurisdictional statute precludes appellate review of factual matters and the application of law to facts."); 38 U.S.C. § 7292(d)(2).

Mr. Vargas also suggests that one or more of the regional office's claim determinations that were reviewed for CUE lacked finality, in the sense that there was no statement of the case that is a precondition for finality, at least not one addressing the issue subjected to CUE review—in which case, he argues, CUE review (which presupposes finality) was improper. *See Lang*, 971 F.3d at 1352 ("[O]nly final decisions are subject to CUE. If there is no final decision, there can be no CUE; and the Board would have been required to dismiss the CUE motion in its entirety." (internal quotation marks omitted)). But Mr. Vargas has not

established the several premises of this apparent argument in comprehensible fashion. Most particularly, he has identified no legal error in the Veterans Court's opinion relating to any such non-finality contention. And the government recognizes that the decision in this case does not prevent Mr. Vargas from raising before VA a non-finality contention not rejected here. *See* Appellee Br. at 11 ("Decisions in this appeal do not prevent him from raising his nonfinality theory before VA," at least as to some of his claims.).

Mr. Vargas further indicates in his informal brief that he is challenging a constitutional decision by the Veterans Court, but we struggle to find, without any further explanation, the basis of this argument. Although we read pro se filings liberally, *Harris v. Shinseki*, 704 F.3d 946, 948 (Fed. Cir. 2013), Mr. Vargas's argument appears to recite similar arguments regarding the merits of his claims that are merely labeled constitutional, therefore precluding our review. *See Flores v. Nicholson*, 476 F.3d 1379, 1382 (Fed. Cir. 2007) ("[T]he appellant's 'characterization of [the] question as constitutional in nature does not confer upon us jurisdiction that we otherwise lack.'" (quoting *Helfer v. West*, 174 F.3d 1332, 1335 (Fed. Cir. 1999))).

We have reviewed Mr. Vargas's remaining arguments and find them not to raise an issue within our jurisdiction.

### III

We dismiss the appeal for lack of jurisdiction.

The parties shall bear their own costs.

**DISMISSED**